# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WEYERHAEUSER COMPANY,<br>        Plaintiff, | |
| v. | Case No. CIV-05-382-RAW |
| RICKY BRANTLEY; CINDY BRANTLEY;<br>CARL BRANTLEY; KELLY BRANTLEY;<br>ROBERT BRANTLEY; BOBBY<br>BRANTLEY; DEBBIE BRANTLEY TOON;<br>SAMUEL RICHARDS; OWEN B. HEARNE,<br>individually; OWEN B. HEARNE, as trustee<br>of the Hearne Trust; CHARLETTE HEARNE,<br>individually; CHARLETTE HEARNE, as<br>trustee of the Hearne Trust; TINECIA<br>HEARNE, individually; TINECIA HEARNE,<br>as trustee of the Hearne Trust; BROKEN<br>BOW LEASING L.L.C.; and DALE TOON,<br>        Defendants. | |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

Plaintiff, Weyerhaeuser Company ("Weyerhaeuser") filed its complaint against Ricky

Brantley and Cindy Brantley on September 14, 2005. On January 31, 2006, Weyerhaeuser amended

its complaint to add Defendants Carl Brantley, Kelly Brantley, Robert Brantley, Bobby Brantley,

Debbie Brantley Toon, Samuel Richards, Owen B. Hearne and Charlotte Hearne, individually and

as trustees of the Hearne Trust, Tinecia Hearne individually and as beneficiary of the Hearne Trust,[1]

Broken Bow Leasing L.L.C. and Dale Toon. Prior to trial, all Defendants except Carl Brantley

---

[1]Tinecia Hearne was dismissed in her capacity as beneficiary of the Hearne Trust.

1

entered into settlement agreements with Weyerhaeuser.

Weyerhaeuser requests the Court grant the following relief to Weyerhaeuser against Carl Brantley: (i) a declaratory judgment affirming Weyerhaeuser's ownership of the property in question; (ii) an order of ejectment, removing Carl Brantley from Weyerhaeuser's property; (iii) a finding of trespass and awarding damages; (iv) an order to quiet title to the subject property in Weyerhaeuser; and (v) injunctive relief ordering Carl Brantley to stay off Weyerhaeuser property, keep his livestock and property off Weyerhaeuser property and to refrain from interfering in any way with Weyerhaeuser's use and enjoyment of Weyerhaeuser property, including but not limited to land surveying and forestry operations.

Carl Brantley concedes that Weyerhaeuser is the record title owner, yet claims ownership, via adverse possession, of all or part of the area commonly referred to as the "Sherrill Farm,"[2] generally located on the edge of the Craig Area in McCurtain County, Oklahoma. He asserts no ownership interests, via adverse possession or otherwise, to any of the other property that was the subject of this lawsuit.

A non-jury trial was held June 14, 2006 through June 16, 2006. The Court heard testimony from Carl Brantley, Robert Heinemann, Kyle Johnson, Patsye Farmer, Carol Smith, James Sorenson, Bruce Shelton, Samuel Richards, Rhonda Brantley, Robert Brantley, Randall Brantley, Chris Chappell, Jimmy Patrick, Jamie Denison and Dennis Wilson.[3] The following Weyerhaeuser Exhibits

---

[2]In the Stipulated Facts, the parties sometimes reference the Craig Seed Orchard. For clarity, the Court notes that the Sherrill Farm has also been known in the past as the Craig Seed Orchard.

[3]As is always the case, some witnesses were more credible than others. Fortunately, the Court did not need to spend much time weighing credibility in this case, as most of the testimony given by witnesses for both parties was not inconsistent. For example, most every witness for

were admitted: 3, 17-28, 30-38, 40, 42-58. The following Carl Brantley Exhibits were admitted: 12-33. Upon review of all the evidence, the Court finds in favor of Weyerhaeuser and against Carl Brantley.

## **Stipulated Facts**

1.     Carl Brantley is a resident and citizen of McCurtain County, Oklahoma.

2.     Carl Brantley, in conjunction with his father, Bobby Brantley, and his brother, Robert Brantley, last executed a grazing license agreement with Weyerhaeuser for the 2004 grazing season (i.e. January 1, 2004 through December 31, 2004).

3.     The license agreement shared by Carl, Bobby, and Robert Brantley authorized approximately seventy cattle to graze on property belonging to Weyerhaeuser.

4.     The license agreement shared by Carl, Bobby, and Robert Brantley was annually renewed between 1993 and 2004.

5.     Carl Brantley did not renew the grazing license agreement with Weyerhaeuser for the 2005 grazing season.

6.     Bobby Brantley, on behalf of himself, renewed the grazing license agreement with Weyerhaeuser for the 2005 season.

---

Carl Brantley -- his friends and family -- testified that they did not *know* of Weyerhaeuser's presence on the Sherrill Farm. This is not inconsistent with the testimony that Weyerhaeuser was present. Carl Brantley and his friends and family seemed to recognize at least some presence by OSU, though some testified they never saw OSU personnel. Again, this is not inconsistent testimony. The Court notes, however, that when the testimony diverged, the Court examined the demeanor of each witness and the consistency of all the testimony at trial in evaluating the discrepancy. For example, when Carl Brantley flatly claimed that OSU was not engaging in activities on the Sherrill Farm, in direct contradiction to OSU employees' testimony, the Court, examining the demeanor of each witness and the consistency of all of the testimony at trial, did not find Carl Brantley's testimony believable.

7.    The license agreement shared by Carl, Bobby, and Robert Brantley from 1993 through 2004, and renewed by Bobby Brantley for the 2005 grazing season, did not encompass or include the Craig Seed Orchard or the Sherrill Farm.

8.    Carl Brantley asserts no ownership interests, via adverse possession or otherwise, to any property belonging to Weyerhaeuser in the Blue Hole, Glover River, or Toon licensing areas at issue in the above entitled action.

9.    Samuel Richards has not executed a license agreement with Weyerhaeuser for the Craig Seed Orchard and/or the Sherrill Farm at any time.

10.   The property which Bobby and Robert Brantley attempted to purchase from Weyerhaeuser in 2005 did not include the Craig Seed Orchard and/or the Sherrill Farm.

11.   Carl Brantley has not paid the property taxes as to any property belonging to Weyerhaeuser that he claims to own via adverse possession.

12.   Ricky Brantley and Cindy Brantley had no lawful claim to any of the lands in dispute.

13.   Carl Brantley has never been a party to, nor signatory of, the agreements between Weyerhaeuser and the State of Oklahoma Department of Wildlife Conservation ("ODWC").

14.   Carl Brantley has never been a party to, nor signatory of, the agreements between Weyerhaeuser and any division of Oklahoma State University ("OSU").

15.   Weyerhaeuser is the record title owner of the Craig Seed Orchard and the Sherrill Farm.

16.   Weyerhaeuser paid ad valorem taxes for all relevant periods in this case for the Craig Seed Orchard and the Sherrill Farm.

## Findings of Fact[4]

1.    Weyerhaeuser is the record title owner to all the property at issue in this suit.

2.    Although Carl Brantley and Weyerhaeuser have stipulated that Ricky and Cindy Brantley had

      no lawful claim to any of the lands in dispute, Ricky and Cindy Brantley claimed that they

      owned the entire Craig Area, which includes the Sherrill Farm, by adverse possession.

3.    Carl Brantley claims ownership, via adverse possession, of "approximately 300 acres located

      within Sections 17 and 20, Township 6 South, Range 26 East, McCurtain County, Oklahoma,

      lying generally south and west of the Mountain Fork River, and north and east of the former

      Craig manufacturing facility," the area commonly referred to as the "Sherrill Farm."  With

      one exception, Carl Brantley claims ownership to the entire parcel of land outlined in the

      solid orange line, as set forth on Plaintiff's Exhibit 47.  At trial, Carl Brantley stated that he

      is not claiming ownership to the small rectangular research plot located in the southeastern

      corner of the area within the solid orange line.  The area Carl Brantley claims is almost

      totally enclosed through fences and natural boundaries, such as the Mountain Fork River.

4.    Carl Brantley does not reside on the Sherrill Farm.  Rather, he grazes livestock on the Sherrill

      Farm.  He claims he began grazing his livestock on the Sherrill Farm in the early 1980's and

      has continuously done so since that time.  He testified that he has occupied the land

      exclusively since Weyerhaeuser logged the pine seed trees off of the area in the fall of 1987.

      Carl Brantley claims he has made substantial use of the property without permission from

      Weyerhaeuser to do so.  Carl Brantley claims that he is currently running approximately 73

---

[4]To the extent any of these findings of fact may be deemed conclusions of law, they may
be so considered.

mother cows and their calves on the Sherrill Farm; that at times he has run approximately 100 mother cows, not including any calves, on the Sherrill Farm; that he has built and maintained corrals, feed troughs and fences on the Sherrill Farm; that he spends at least ten hours each week on the Sherrill Farm; that he has removed brush and has grown and harvested hay and wheat from the Sherrill Farm; that he has maintained a trap pen and feeding area for wild hogs on the Sherrill Farm; that he has owned several hundred hogs on the Sherrill Farm; and that he has maintained roads and culverts on the Sherrill Farm.

5.   Carl Brantley admits that cattle belonging to other individuals have come onto the Sherrill Farm in the last fifteen years, but claims that he has always gathered and removed them or contacted the owner of such cattle and asked them to remove the cattle.

6.   Carl Brantley claims that several horses running with his cattle do not belong to him. At least two witnesses have seen approximately seven horses running with Carl Brantley's cattle. According to one witness, the horses look well cared for. Dennis Wilson, a biologist for OSU who spent considerable time on the Sherrill Farm, testified that he saw the same group of horses running on the Sherrill Farm for a number of years in the mid-1990's.

7.   Carl Brantley admits that Weyerhaeuser is the record owner and that he has never held a deed to the Sherrill Farm. He also admits that he has been occupying the Sherrill Farm without a lease or a license. Carl Brantley acknowledges that most of the Sherrill Farm was leased to OSU in 1987.

8.   Carl's father, Bobby Brantley, held a cattle grazing license from 1983 to 1992 that included

the Sherrill Farm.[5]

9.    Eight years ago, Weyerhaeuser entered into a long term land management agreement, which included the Craig area with the ODWC. The Sherrill Farm was part of the agreement between Weyerhaeuser and the ODWC to create the Three Rivers Wildlife Management Area. The ODWC has printed thousands of copies of maps of the Three Rivers Wildlife Management Area since 1998 and has distributed those copies, which show the area to include the Sherrill Farm, to the public. Although the ODWC has posted signs on the Sherrill Farm indicating that it is open to the public, most of the signs in the Craig area are vandalized or stolen. ODWC officer Kyle Johnson entered the Sherrill Farm on only one occasion since the inception of the land management agreement. Kyle Johnson entered the Sherrill Farm through Carl Brantley's gate, which was locked on every other occasion that he visited the Sherrill Farm. Although the Sherrill Farm is marked as part of the ODWC's Three Rivers Wildlife Management Area on maps and is part of the Three Rivers according to the testimony of Kyle Johnson, Carl Brantley asserts that it is not part of the Three Rivers Wildlife Management Area. Carl Brantley has purchased an ODWC license for at least five

---

[5]Carl Brantley could not recall how many years his father leased the land, but stated he was sure that his father had left the Sherrill Farm by the time OSU leased it. Bobby Brantley also could not recall how many years he held the licence, but believes he was off the Sherrill Farm by the time OSU came onto it. Although Weyerhaeuser routinely destroys files after leases are terminated and therefore does not have copies of receipts for each year of Bobby Brantley's lease, Weyerhaeuser's records show Bobby Brantley's cattle grazing license agreement as being terminated on July 1, 1992. Furthermore, the 1992 termination date is consistent with Weyerhaeuser and OSU's lease and the fact that OSU personnel, seeming to acquiesce in the Brantley's presence on the Sherrill Farm, did not seek to have them removed completely, but instead met with Bobby Brantley and Carl Brantley and simply requested that they keep their cattle off OSU's research plots. OSU also fenced much of the Sherrill Farm, some of the fencing's purpose being to limit access of the cattle and hogs on the Sherrill Farm to OSU's research plots.

years, but claims he never saw the Sherrill Farm on the maps. Carl Brantley claims he has never seen a game warden on the Sherrill Farm and that no member of the public has claimed a right to hunt on the Sherrill Farm because of the ODWC agreement, but admits that he has seen hunters from time to time on the Sherrill Farm and asked them to leave.

10. Most of the Sherrill Farm was leased from Weyerhaeuser by OSU in 1987. OSU's lease included a clause making OSU aware that part of OSU's leased area was also subject to a cattle grazing license that would be terminated in 1992. OSU has been quite active and present on the Sherrill Farm. In 1987, OSU harvested most of the Sherrill Farm. In 1988, OSU fenced much of the Sherrill Farm to control damage done by cattle. OSU also irrigated much of the Sherrill Farm and planted trees in 1988. In October of 1993, OSU aerial-sprayed the Sherrill Farm using Arsenal and Oust to kill some of the vegetation, including the honey locusts and golden rod, in preparation for plantings. In early 1994, OSU borrowed a bulldozer from the U.S. Forest Service, and Dennis Wilson, a biologist employed by OSU, spent at least two weeks within the Sherrill Farm bulldozing and piling trees, including honey locusts. Thereafter, OSU control-burned most of the piles of brush and trees within the Sherrill Farm. Around 1996, OSU planted a short-leaf pine research site and a loblolly research site within the Sherrill Farm. An OSU crew, including Dennis Wilson, took about two weeks to complete the plantings. In 1996, OSU fenced the rectangular plot in the southeastern corner of the Sherrill Farm. Because of the unique nature of the trees OSU intended to plant there, OSU used a tighter fence to keep out livestock. After the trees had grown in pots for two years, in 1998, OSU planted their "Providence plot," a "hybrid loblolly short leaf tissue bank," in the fenced-in rectangular area.

11.   After a flood in the summer of 1992, OSU contacted Weyerhaeuser, and Weyerhaeuser's road superintendent rebuilt road culverts on the Sherrill Farm. The task took an entire day and included several truckloads of fill plus two new metal culverts. In 2000, Weyerhaeuser conducted a survey for gravel across the entire Sherrill Farm. Weyerhaeuser's agents were on the Sherrill Farm every day for a week with a backhoe digging holes at regular intervals to test for the depths of the gravel. Weyerhaeuser then amended the lease with OSU to reduce the area contained within the lease because Weyerhaeuser wanted to sublease some of the northern portion of the Sherrill Farm to B & B Sand and Gravel pursuant to Weyerhaeuser's mineral rights in the land. The area taken back from the original OSU lease is within the Sherrill Farm.

12.   In 1989, Robert Heinemann, head of the OSU research center, met with Carl Brantley and Bobby Brantley on the Sherrill Farm. Heinemann told Carl Brantley to remove his cattle from OSU's research site or OSU would continue to run them off. Carl Brantley and Bobby Brantley said they would continue to run cattle there. Consequently, OSU employees consistently forced cattle belonging to Carl Brantley from the southern half of the Sherrill Farm and into the northern half of the Sherrill Farm. OSU put up a fence with a gate between the northern and southern halves of the Sherrill Farm to keep the cattle to the north side. Repeatedly, OSU found the fence cut[6] and the cattle on the southern end trampling OSU's research sites. Each time this occurred, OSU repaired the fence and forced the cattle back north through OSU's gate.

---

[6]There is no evidence as to who cut this fence; however, on one occasion, Heinemann did witness Carl Brantley cutting another OSU fence just outside the Sherrill Farm.

13.   Dennis Wilson met Carl Brantley many times going in and out of the Sherrill Farm on the main road.  On one occasion Wilson was duck hunting on the Sherrill Farm with his dog when the dog upset some of Carl Brantley's hogs.  Carl Brantley came and told Wilson not to bother his hogs.

14.   Sometime in 1993, a mare that ran on the Sherrill Farm was just outside the Sherrill Farm when she and her foal died.  Before the two died, Dennis Wilson attempted to find the owner.  Carl Brantley and Bobby Brantley came out, but never said that the horses belonged to either one of them.  Carl Brantley never removed the dead horses from the side of the road, so OSU moved them.

15.   Carl Brantley's cattle and hogs damaged research projects conducted by OSU.  Portions of land bordering the Sherrill Farm eventually had to be thinned and the harvested trees used for fenceposts because so much damage had been done that they were rendered useless for research purposes.  In addition, a substantial quantity of young seedlings planted by OSU in the mid-1990's in the southern portion of the Sherrill Farm were destroyed by cattle.  Dennis Wilson also observed cattle and hog damage to trees planted by OSU.  All of the cattle present on the Sherrill Farm belong to Carl Brantley.

16.   OSU had individuals live on-site[7] for security patrols of the land in the Craig area.  OSU personnel frequently repaired fencing, including fencing on the Sherrill Farm.  OSU maintained a locked gate on the southern end of the Sherrill Farm.  Carl Brantley never had a key to OSU's locked gate to the Sherrill Farm.

--------

[7]The land OSU has leased from Weyerhaeuser includes most of the Sherrill Farm and some land surrounding the Sherrill Farm.  The OSU personnel lived on the land leased to OSU just outside the Sherrill Farm on the southwest corner.

17. The Sherrill Farm lies directly adjacent to land Carl Brantley leased from Weyerhaeuser. In 1999, Stoney Walker, a Weyerhaeuser employee, wrote to Carl, Bobby and Robert Brantley requesting that they remove their cattle from the "Craig plant site."

18. Carl Brantley admits that he was in a licensee relationship with Weyerhaeuser from 1993 to 2003 to allow his cattle to graze on land owned by Weyerhaeuser. This license status required him to write an annual check to Weyerhaeuser for his use of its land.

19. Carl Brantley did not tell Weyerhaeuser at any point during the term as a licensee that he claimed to own the neighboring Sherrill Farm through adverse possession. In addition, he never told anyone at ODWC that he claimed ownership of the Sherrill Farm, and he never told Robert Heinemann, head of the OSU Research Center, that he owned the Sherrill Farm. Further, Carl Brantley never put into writing the fact that he owned the Sherrill Farm. He claims, however, that the vague reference in his divorce decree covering "all real property" implicitly referred to the Sherrill Farm. Carl Brantley did not make any mention to Weyerhaeuser, OSU or ODWC of being the owner of the Sherrill Farm as an adverse possessor until after the hearing on the preliminary injunction in this case. Fifteen days after that hearing, he brought suit against Weyerhaeuser in McCurtain County District Court claiming adverse possession.

20. The area that Carl Brantley had originally claimed in the McCurtain County District Court was larger than the area he claimed to own by adverse possession in this trial. In fact, Carl Brantley claimed roughly 480 acres in the McCurtain County lawsuit, whereas here he claims roughly 300 acres. Weyerhaeuser was never served in the McCurtain County lawsuit. Instead, Weyerhaeuser employees read about Carl Brantley's claim in the newspaper.

21.  On the first day of this trial, Carl Brantley stated for the first time that he was not claiming a fenced-in portion of the Sherrill Farm.  The fenced-in area that Carl Brantley decided that he was not claiming by adverse possession is a small rectangular area in the southern end that was planted with pine trees by OSU in 1998.  Carl Brantley included the rectangular area in the map he drew of the area he intended to claim via adverse possession in his deposition exhibit more than one month before trial.  Carl Brantley states that he intended to exclude the rectangular area, but admits that he had an opportunity to correct the "error" and failed to do so.  Carl Brantley himself seemed uncertain of the precise boundaries of the area that he claims to own by adverse possession, and he possesses no survey or precise legal description of the area, which is evidenced by its evolving boundaries in this litigation.

22.  Carl Brantley claims that he has had a locked gate at the entrance to the land in dispute since the early 1980's.  The first gate that existed was removed a year and a half to two years ago, and Carl Brantley put in a second locked gate that changed and increased the amount of land that was contained in the area that he is claiming.[8]  Carl Brantley has loaned the key to various individuals, including his son, but has never provided a key to an employee of Weyerhaeuser.

23.  Carol Smith, a Weyerhaeuser employee, has seen Carl Brantley's cattle trespassing outside of the grazing license area that he leased with Robert and Bobby Brantley several times.  The grazing license area is southwest of the Sherrill Farm, and the presence of the cattle on land

---

[8]Carl Brantley testified that he moved the gate because frequently people gathered and drank beer on the area just outside his gate and left beer cans behind.  On two occasions, Carl Brantley found a cow destroyed near the gate.  He then moved the gate out, enclosing that area to make it inaccessible to the public.

outside of that licensed area constitutes trespass.

24.     Carl Brantley has exhibited a pattern of disregard for the rights of property owners. He admits that he placed a corral on land he believed to be owned by Weyerhaeuser. Instead, that land was owned by Patsye Farmer. Apparently, Carl Brantley is known as one to use whatever land he wishes because when Patsye Farmer asked around the community regarding ownership of the corrals, she was told that Carl Brantley had many cattle in the area and was the probable owner of the corrals. When the Farmers visited Carl Brantley and asked him to remove the corrals, he failed to do so. Patsye Farmer then sent a certified letter telling him that if he did not remove the corrals, the Farmers would do so themselves.

25.     On March 3, 2003, Weyerhaeuser granted an easement to Patsye Farmer so that she could access her privately-owned five-acre parcel of property which lies adjacent to the Sherrill Farm and the Mountain Fork River. Carl Brantley was not a signatory to the easement. The easement provided access across the Sherrill Farm beginning on the section line between Sections 17 and 20, and along the road upon which Carl Brantley maintained his locked gate. Prior to the execution of the easement, Ms. Farmer was rarely able to access her land by traveling along the road through Carl Brantley's locked gate, but instead, had to travel farther south and access it through a gate maintained by OSU.[9] Both prior to and subsequent to the execution of the easement, Carl Brantley continually attempted to prevent Ms. Farmer's access across the Sherrill Farm at the path through his gate and admits that he removed locks and chains she placed on the gate. He never gave a key to Ms. Farmer, but did give a key to Lavelda Stuart, the person who purchased the property from Ms. Farmer.

_____

[9]Heinemann gave Ms. Farmer a key to OSU's gate into the Sherrill Farm.

26. When she was working on Ms. Farmer's easement, Carol Smith went into the Sherrill Farm through Carl Brantley's gate at least twice. The gate was closed, but not locked. Carol Smith testified that the fact that Carl Brantley locked the gate sometimes was not an issue in need of quick resolution because Weyerhaeuser always had other entrances into the Sherrill Farm.

27. Following the entry of the preliminary injunction in this case, Jim Sorenson saw approximately 150 cattle and seven horses on the southern area of the Sherrill Farm. Cattle and horses were still seen on the property just days before the trial began.

28. Due to Carl Brantley's continuing trespass on and destruction of Weyerhaeuser lands, Weyerhaeuser has been unable to utilize the lands to their potential. The lease between Weyerhaeuser and OSU was terminated in August, 2004. Weyerhaeuser plans to put the land back in pine production and pursue the gravel mining potential of the land, and these plans have been delayed by the actions of Carl Brantley, causing Weyerhaeuser economic loss. Weyerhaeuser has been unable to establish new plantations in the Sherrill Farm because of the number of livestock present in the area. The inability to grow trees in that area for two years amounts to just under $10,000 in damages. In addition, Jim Sorenson, manager of the Oklahoma timberlands for Weyerhaeuser, testified that concern about liability for injury to cattle and possible vandalism of expensive equipment has prevented Weyerhaeuser from pursuing gravel mining in that area. Weyerhaeuser estimates $200,000 in lost revenue as a result of not being able to mine the gravel for two years.

29. The damages alleged by Weyerhaeuser regarding the gravel mining it has been unable to pursue because of Carl Brantley are uncertain and speculative. Mr. Sorenson, the only

witness offered by Weyerhaeuser in regard to the amount of damages incurred, is not trained

in mineral development or monetary valuation of minerals. In fact, Mr. Sorenson did not

value the minerals at issue personally, but relied upon someone else's expertise. Mr.

Sorenson provided no documentation in support of his allegations as to the amount of

mineral development on the Sherrill Farm, the costs to Weyerhaeuser as to the mineral

development or the lost profit from the mineral development.

## Conclusions of Law[10]

1. This Court has jurisdiction over the parties and this action pursuant to 28 U.S.C. § 1332.

   Venue lies in this district pursuant to 28 U.S.C. § 1391.

2. Weyerhaeuser is the legal, equitable and record owner, in fee simple absolute, of the lands

   known herein as the Craig Area, including the Sherrill Farm.

3. Carl Brantley asserts the defense of adverse possession to Weyerhaeuser's claim of trespass.

   "To establish adverse possession the claimant must show that possession was hostile, under

   a claim of right or color of title, actual, open, notorious, exclusive, and continuous for the full

   statutory period." *Francis v. Rogers*, 40 P.3d 481, 485 (Okla. 2001).

4. The statutory period for title by adverse possession in Oklahoma is fifteen years. OKLA.

   STAT. tit. 12 § 93(4).

5. A party who claims title by adverse possession "has the burden of proving every element by

   clear and positive proof." *Francis*, 40 P.3d at 486. "It is settled law in this jurisdiction that

   one claiming title by adverse possession has the burden of proving all facts necessary to

---

[10]To the extent any of these conclusions of law may be deemed findings of fact, they may
be so considered.

establish such title and that to establish same the proof must be clear and positive and all inferences and presumptions are in favor of the rightful owner." *Norman v. Smedley*, 363 P.2d 839, 843 (Okla. 1961).

6. Carl Brantley has failed to demonstrate the necessary elements to succeed on a claim of adverse possession. *See Shanks v. Collins*, 782 P.2d 1352, 1354 (Okla. 1989); *Norman*, 363 P.2d at 843 (Okla. 1961); OKLA. STAT. tit. 12, § 93(4).

7. Not once since 1980-81 when Carl Brantley claims to have begun his use of the Sherrill Farm, nor since 1987 when he claims his period of adverse possession began did Carl Brantley pay taxes on the Sherrill Farm. "The payment of taxes is not a controlling circumstance, but it is one of the means whereby a claim of ownership is asserted, and the failure to pay taxes for so long a time tends to weaken a claim of ownership by adverse possession." *Anderson v. Francis*, 57 P.2d 619, 622 (Okla. 1936).

8. The boundaries of the land Carl Brantley claims to own by adverse possession have evolved to suit his purpose. At one point he included the southeastern rectangular plot planted by OSU. Then, tellingly, when he realized that it was incontrovertible that OSU had been busy on that plot, he conveniently carved that portion out of the land he claimed to own at trial. A couple of years ago when he became annoyed by the public using the area just outside the gate he had placed on property to which he did not own title, he decided to move his gate farther out to increase the amount of land he now claims by adverse possession. Even now he argues that if the Court finds that the southern half of the Sherrill Farm has, indeed, been co-occupied by OSU all of these years that the boundary to the property he claims to own should conveniently be moved north to run along OSU's gate through the center of the

Sherrill Farm.

9.      There is no doubt that Carl Brantley has been grazing his cattle on Weyerhaeuser's land known as the Sherrill Farm. Carl Brantley has not, however, been the only person using the Sherrill Farm. It is clear from the facts that OSU has made much use of the Sherrill Farm. OSU has even moved Carl Brantley's cattle to the north several times in an attempt to preserve its research plots. Hunters have also used the Sherrill Farm in accordance with their ODWC Three Rivers Wildlife Management Area licenses. Carl Brantley claims, and the Court has no doubt that he did, run the hunters off when he spotted them, but it is unlikely he spotted all or even most of the hunters who came onto the land using their ODWC maps and armed with their ODWC licenses. These are more than "mere casual intrusions" as Defendant suggests. Weyerhaeuser employees have also been on the Sherrill Farm doing surveys. The Farmers accessed the Sherrill Farm via Carl Brantley's gate when it was open and through OSU's gate when it was not. Later, Carl Brantley simply gave a key to Lavelda Stuart. Weyerhaeuser repaired culverts on that same road in 1992. Carl Brantley claims that he has constantly repaired cut fences surrounding the Sherrill Farm. There is no evidence to show definitively who may have been cutting the fences. Indeed, Ricky Brantley and Cindy Brantley did claim that they held title to the entire Craig Area via adverse possession. There are also several horses running on the Sherrill Farm with Carl Brantley's cattle. Carl Brantley testified that the horses do not belong to him. He also left two of them dead on the side of the road, suggesting that indeed, they do not belong to him. The evidence seems to show that the horses are not wild, but there is no evidence as to whom they do belong. Although Carl Brantley claims his father has not occupied the land under his lease

since before 1987, Weyerhaeuser's records show Bobby Brantley's lease of the Sherrill Farm terminated in 1992.

10.    At best, a mixed possession has been demonstrated, and the law requires that, in such situations, the individual with the better title be deemed the possessor of the land. *Sears v. State, ex rel. Dept. of Wildlife Conservation*, 549 P.2d 1211, 1213 (Okla. 1976) (citing *Howard v. Standolind Oil and Gas Co.*, 169 P.2d 737 (Okla. 1946)).

11.    Carl Brantley had the burden to prove each and every element by clear and positive proof. Clearly, he did not exclusively possess the Sherrill Farm for the statutory period. There is no need then to belabor the other elements.

12.    Likewise, Carl Brantley has failed to demonstrate the necessary elements to succeed on a claim of an easement by prescription. *See* OKLA. STAT. tit. 60, § 333; *Zimmerman v. Newport*, 416 P.2d 622, 629 (Okla. 1966). The requirements for an easement by prescription in the State of Oklahoma are generally the same as those for adverse possession. *Id*.

13.    Carl Brantley has no claims, either at law or in equity, to any portion of the lands owned, claimed or possessed by Weyerhaeuser previously identified in the instant action as the Craig Area, or to any other lands which have ever been the subject of this suit.

14.    "Trespass involves an actual physical invasion of the real estate of another without the permission of the person lawfully entitled to possession." *Williamson v. Fowler Toyota, Inc.*, 956 P.2d 858, 862 (Okla. 1998). The Oklahoma Supreme Court continues: "Stated another way, a trespasser is one who enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for

his own purposes, pleasure, or convenience, or out of curiosity." *Id*. Carl Brantley physically entered Weyerhaeuser's real estate without any permission for his own purposes. His affirmative defenses failed. Under the facts of this case, Carl Brantley trespassed on Weyerhaeuser's land.

15. Title to the lands known as the Craig Area should be and are quieted in favor of Weyerhaeuser and any cloud which may have appeared on Weyerhaeuser's claim to these lands as a result of the actions of Carl Brantley is removed. *See Sears*, 549 P.2d at 1213.

16. Weyerhaeuser has been damaged as a result of Carl Brantley's wrongful conduct, including acts of trespass.

17. As the prevailing party, Weyerhaeuser is entitled to an award of reasonable costs and attorneys fees in addition to any findings of damages by this Court. OKLA. STAT. tit. 12, § 940.

18. Weyerhaeuser is entitled to an entry of a permanent injunction proscribing certain acts and non-acts of Carl Brantley and restoring to Weyerhaeuser the exclusive use, dominion, control and enjoyment of the lands at issue.

19. Weyerhaeuser is entitled to the protections of the law and enforcements of the law by appropriate state and federal agencies having jurisdiction of the lands, issues and acts adjudicated in the instant case.

20. The Court finds that Weyerhaeuser established by the greater weight of the evidence that it is, and at all times material to the adjudication of the claims presented has been, the legal, equitable and record owner of all lands in dispute. Carl Brantley failed to meet his burden of proof by the greater weight of the evidence regarding adverse possession. The Court

further finds, by the greater weight of the evidence, that 1) title to said lands are quieted in favor of Weyerhaeuser; 2) that Carl Brantley is hereby ordered ejected from the lands at issue and any other lands owned by Weyerhaeuser; 3) that, as a matter of law, Carl Brantley's intrusion upon said lands constituted a trespass; 4) that Weyerhaeuser has established, on the merits of the action, and by clear and convincing evidence, a substantial probability it will suffer irreparable harm because of the past and anticipated acts of Carl Brantley regarding the alleged trespass of cows, horses and hogs if not granted; and 5) that Weyerhaeuser has suffered damages in the amount of $10,000.

IT IS THEREFORE ORDERED that Carl Brantley is hereby prohibited from performing any of the following acts, whether directly or indirectly, and whether alone, by or through his agents or others acting for him, or in concert with others:

1. Threatening or interfering with Weyerhaeuser employees and agents, whether directly or indirectly, while they are carrying out their legitimate business duties, including but not limited to forestry workers and surveyors, in McCurtain County, Oklahoma.

2. Use, whether directly or indirectly, for agricultural activities, farmland, or forestry activity, the land tracts identified herein, as the Craig Area, as well as all other McCurtain County land to which Weyerhaeuser is the record legal owner.

3. Interfering with contracts or relationships, or prospective contracts or relationships, between Weyerhaeuser and the customers, suppliers, representatives, or clients of Weyerhaeuser.

4. Threatening or interfering with witnesses in this matter, or their employees and agents, whether directly or indirectly. For purposes of this provision, witnesses shall include any

person testifying at the hearing on March 9, 2006, persons identified in Rule 26 disclosures by any party, or persons otherwise identified in any written discovery exchanged to date by any party, inclusive of the Pretrial Order entered by the Court on May 18, 2006 or any witness sworn during the proceedings which commenced on June 14, 2006.

IT IS FURTHER ORDERED THAT Carl Brantley and all his employees and agents, no later than September 15, 2006 at noon shall return forthwith to Weyerhaeuser unlimited and exclusive use, dominion and control over said lands to include removal of any and all cattle, horses, hogs or feral hogs from the land tract identified herein as the Sherrill Farm, as well as all other McCurtain County land to which Weyerhaeuser is the record legal owner.

IT IS FURTHER ORDERED THAT Carl Brantley, and all his employees and agents thereof shall accomplish the directives of this Court without breach of the peace or of any City, State or Federal laws, or the destruction, alteration or diminution of any land tract identified herein as the Sherrill Farm, as well as all other McCurtain County land to which Weyerhaeuser is the record legal owner, including any appurtenances, improvements, structures, surface, mineral or riparian rights involving said lands.

IT IS FURTHER ORDERED THAT Weyerhaeuser, in protection of its lands and holdings, may engage in self-help to the extent of seizure of any livestock, including cattle other domestic or exotic animals, horses, hogs and feral hogs or farming and ranching implements of animal husbandry, removal of any structure, improvement, fence, corral, pens, cage or other such alteration to its lands, as is necessary to restore the lands to the unlimited use, dominion and control of Weyerhaeuser.

IT IS FURTHER ORDERED THAT the Sheriff of McCurtain County, State of Oklahoma,

and/or the U.S. Marshall are directed to enforce the laws of the State of Oklahoma to allow Weyerhaeuser to effectuate return of the unlimited use, dominion and control of the land tract identified herein, as well as all other McCurtain County land of which Weyerhaeuser is the record legal owner, to Weyerhaeuser. The Sheriff and/or U.S. Marshall are directed to enforce the laws of trespass, assist in actions of ejectment, conduct lawful sales of such property and items as may be seized by Weyerhaeuser or the Sheriff and/or U.S. Marshall upon Weyerhaeuser lands, and to take such other and further action as is necessary to restore the lands identified herein to the unlimited use, dominion and control of Weyerhaeuser.

IT IS FURTHER ORDERED THAT the Sheriff of McCurtain County, State of Oklahoma, and/or the U.S. Marshall in order to enforce the laws of the State of Oklahoma, and to give full force and effect to this Injunction, may conduct lawful sales of such property and items as may be lawfully seized by Weyerhaeuser or the Sheriff and/or the U.S. Marshall upon Weyerhaeuser lands, at any location within the purview and jurisdiction of the United States District Court for the Eastern District of Oklahoma; to engage in and facilitate such sales, the Sheriff of McCurtain County, State of Oklahoma, and/or the U.S. Marshall may consult with and contract with other law enforcement officers or such other third persons, agents or brokers as are necessary and proper to facilitate sales at locations outside of McCurtain County.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that livestock, including cattle, exotic livestock, domestic animals, horses, hogs and feral hogs from the land tract identified herein, as well as all other McCurtain County land to which Weyerhaeuser is the record legal owner, which are not otherwise able to be captured and relocated or sold may be dealt with in a manner and by methods prescribed by and subject to the approval and oversight of the representatives, wardens and

agents of the ODWC.

IT IS FURTHER ORDERED THAT the costs, expenses and fees incurred by Weyerhaeuser, its employees or agents, and the Sheriff of McCurtain County and/or the U.S. Marshall, and their employees and agents, to implement, enforce or otherwise effectuate and maintain this Order, for animals of Carl Brantley, shall be assessed against Carl Brantley upon further application to this Court.

IT IS FURTHER ORDERED THAT the knowing failure of Carl Brantley to timely, fully and completely comply with this Order shall result in a finding of indirect contempt upon the filing of an application and submissions of evidence supporting a finding of indirect contempt of this Court's Orders.

IT IS FURTHER ORDERED THAT title to the land described in Weyerhaeuser's First Amended Complaint as the Craig Area and identified in Exhibit D to that First Amended Complaint, is hereby quieted, as to Carl Brantley, in Weyerhaeuser; that Weyerhaeuser is the owner of fee simple title to the Craig Area more fully described in Exhibit D to the First Amended Complaint, with respect to Carl Brantley, free and clear of all liens, claims and encumbrances of Carl Brantley, the known or unknown heirs, executors, administrators, devisees, assigns and successors, immediate and remote, claiming by and through Carl Brantley; that Carl Brantley has no right, title or interest therein and that he is barred and enjoined from asserting any right claim or interest therein and that title to Weyerhaeuser and its successor(s) in the tract described herein is forever quieted and confirmed.

IT IS FURTHER ORDERED THAT Weyerhaeuser is awarded judgment against Carl Brantley in the amount of $10,000.

IT IS FURTHER ORDERED THAT Carl Brantley shall pay the costs and reasonable attorneys' fees associated with the above-entitled matter upon submission of an application.

IT IS FURTHER ORDERED THAT Carl Brantley shall be required to post security with the Clerk of this Court in the event any appeal is filed hereof in that amount of $10,000.

Dated this 31 August 2006.

J4h4i0

Ronald A. White
United States District Judge
Eastern District of Oklahoma